**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LESLIE REICHWEIN and KIRK KLEVER, Plaintiffs, | : | |
| v. | : | No. 5:26-cv-2540 |
| COSTCO WHOLESALE CORPORATION, JOHN DOE (1), JOHN DOE (2), Defendants. | : | |

**O P I N I O N**
**Defendants' Motion for Summary Judgment, ECF No. 15 – Granted**

**Joseph F. Leeson, Jr.** **November 2, 2026**
**United States District Judge**

## I. INTRODUCTION

Plaintiffs Leslie Reichwein and Kirk Klever, husband and wife, filed suit in state court following Reichwein's slip-and-fall in a Costco Wholesale Club warehouse. Defendant Costco removed the action to this Court. Costco now moves for summary judgment, maintaining that there is no evidence showing the cause of Reichwein's fall. For the following reasons, the Court grants Costco's Motion.

## II. BACKGROUND

### A. Factual Background

The following facts come from Costco's Statement of Undisputed Material Facts, *see* Costco SUMF, ECF No. 15, and Plaintiffs' Response to the Statement of Facts, *see* Pl. SUMF, ECF No. 18. Any disputes of fact are denoted below.

This case arises from an incident occurring on March 17, 2024, at the Costco warehouse in Allentown, Pennsylvania. *See* Costco SUMF ¶ 1. In the Complaint, Plaintiff Reichwein

alleged that while inside the Costco she encountered "a water like substance that was permitted to remain on [Costco's] floor for an unreasonable amount of time[.]" Costco SUMF ¶ 4 (citing Compl. ¶ 16, ECF No. 1-3). Reichwein alleged that there were "slippery liquids and/or substances on the floor of the shopping aisles near the produce department of [Costco], and/or other debris such as a[n] overly slippery substance that [Costco] had placed on the floor of its store to clean the floor[.]" Costco SUMF ¶ 5 (citing Compl. ¶ 14). Plaintiffs argued that a slippery floor caused Reichwein to fall. *See* Costco SUMF ¶ 7; *see also* Ex. B, ECF No. 15 (Plaintiffs' responses to Costco's interrogatories).

March 17, 2024, was a sunny day without any precipitation. *See* Costco SUMF ¶ 13; *see also* Reichwein Dep. at 29:13-20. That day, Reichwein entered Costco's produce cooler to get mushrooms. *See* Costco SUMF ¶ 14; *see also* Reichwein Dep. at 32:10-17. Reichwein had visited that Costco warehouse "well over a hundred times," and never had any issues there before. Costco SUMF ¶ 8; *see also* Reichwein Dep. at 27:11-17, ECF No. 15. Specifically, Reichwein previously shopped in the produce cooler without issue. *See* Costco SUMF ¶¶ 15, 18; *see also* Reichwein Dep. at 32:3-9. Reichwein was in the produce cooler for between one and five minutes browsing products. *See* Costco SUMF ¶¶ 16–17; *see also* Reichwein Dep. at 32:22–33:6, 34:5-14. She had an unobstructed view of the mushrooms and did not see anything on the floor of the produce cooler. *See* Costco SUMF ¶¶ 20–21; *see also* Reichwein Dep. at 36:20-23, 37:6-12. She did not see condensation on the floor of the produce cooler. *See* Costco SUMF ¶ 22; *see also* Reichwein Dep. at 40:21–43:7. As Reichwein approached the mushrooms, her "feet slipped out from underneath" her and she "fell back on [her] right hand and [her] thumb was bent and [she] was in extreme pain[.]" Reichwein Dep. at 36:12-15, 38:3-19; *see also* Costco SUMF ¶¶ 23–24. Reichwein checked out, reported the incident, and told Costco employees that she was

unsure why she fell and that she did not notice anything. *See* Costco SUMF ¶ 29; *see also* Reichwein Dep. at 48:3–49:14. She filled out an incident report where she indicated she slipped and fell in the produce cooler at around 12:30 p.m. *See* Costco SUMF ¶ 32; *see also* Ex. E, ECF No. 15; Goodwin Dep. at 18:4-6, ECF No. 15. She did not reference condensation in the incident report. *See* Costco SUMF ¶ 26; *see also* Reichwein Dep. at 62:3-7; *see also* Ex. E.

Costco's Assistant General Manager Brandon Goodwin spoke to Reichwein and within three minutes of the conversation inspected the produce cooler and took photographs. *See* Costco SUMF ¶ 30; *see also* Goodwin Dep. at 6:6, 18:1-17. One of the photographs does not show condensation on the produce cooler floor. *See* Costco SUMF ¶ 31; Reichwein Dep. at Ex. 1.

Additionally, the floor walk[1] performed from 11:05 a.m. to 11:52 a.m., in the hour before Reichwein's fall, did not specifically identify any hazards or spills near the produce cooler. *See* Costco SUMF ¶ 36; *see also* Ex. F, ECF No. 15. There were four instances where there were problems with the store-wide temperature log that day, but the log did not indicate the location of the problems. *See* Ex. F. However, the *refrigeration* temperature logs from March 17, 2024, present that the *produce cooler's* refrigeration was functioning properly and did not have issues. *See* Costco SUMF ¶ 37; *see also* Ex. G, ECF No. 15. Additionally, the floor in the produce cooler was concrete and had not been changed since March 2024. *See* Costco SUMF ¶ 38; *see also* Goodwin Dep. at 39:16-23. Costco did not use chemicals or solutions to scrub or clean the floors. *See* Costco SUMF ¶ 39; *see also* Goodwin Dep. at 37:22–38:11.

At her deposition on August 21, 2026, Reichwein testified it was "slippery" and "wet" when she fell but that she did not see condensation. Reichwein Dep. at 41:14. She later testified

---

[1] Costco "employees conduct hourly inspections of the warehouse, which are called 'floor walks,' to ensure that no potentially hazardous conditions are on the floor." *Choi v. Costco Wholesale Corp.*, No. 22-3329, 2024 WL 658972, at *1 (3d Cir. Feb. 16, 2024).

that it was "slippery" and "cold" on the floor of the produce cooler. Reichwein Dep. at 63:24. Reichwein had never had a similar accident before. *See* Costco SUMF ¶ 25; *see also* Reichwein Dep. at 63:14-20. Reichwein confirmed one of Goodwin's photographs accurately reflected the condition of the produce cooler at the time of her fall. *See* Costco SUMF ¶ 31; *see also* Reichwein Dep. at 50:10–52:9.

Goodwin testified at his August 24, 2026 deposition that the produce cooler floor was clear and free of debris, liquid, or water following Reichwein's fall. *See* Costco SUMF ¶ 33; *see also* Goodwin Dep. at 18:18–19:4. Goodwin denied any prior instances of condensation on the floor of the produce cooler. *See* Costco SUMF ¶ 34; *see also* Goodwin Dep. at 19:5-7. Also, Goodwin denied any instances of prior slip and fall accidents in the produce cooler, although he did recall that "less than three people" fell at the Costco warehouse in 2024. *See* Costco SUMF ¶ 35; *see also* Goodwin Dep. at 21:11–22:13. Additionally, Goodwin testified that the temperature in the produce cooler was and is about forty-five degrees. *See* Goodwin Dep. at 19:8-10. Goodwin testified that he did not know about any temperature log issues on March 17, 2024. *See* Goodwin Dep, at 29:3–32:19.

Reichwein's daughter, Sydney Klever, was present at the produce cooler at the time of Reichwein's fall. *See* Costco SUMF ¶ 40; *see also* Klever Dep. at 20:2-11, ECF No. 15. At her deposition, also held on August 21, 2026, Ms. Klever[2] testified that she did not recall the produce cooler floor being slippery. *See* Costco SUMF ¶ 41; *see also* Klever Dep. at 40:10-16. Plaintiffs maintain that Ms. Klever "was not looking for anything on the floor of the [produce] cooler in question as she was attempting to attend to her mother's injury." Pl. SUMF. ¶ 41. Ms. Klever had

---

2 The Court refers to Sydney Klever as "Ms. Klever" to avoid confusion with Plaintiff Kirk Klever. However, because there is no deposition of Mr. Klever, Ms. Klever's deposition is denoted as "Klever Dep."

no difficulty walking in the produce cooler on March 17, 2024. *See* Costco SUMF ¶ 42; *see also* Klever Dep. at 23:20-24. Neither Ms. Klever, nor her friend who was with her, observed any condensation on the floor. *See* Costco SUMF ¶ 43; *see also* Klever Dep. at 24:1-12. After the incident, Ms. Klever did not recall any conversation about liquid on the floor of the produce cooler but rather recalled that the conversation with Costco management was "about the floors just being generally slippery." Klever Dep. at 24:17-21. Ms. Klever agreed that Goodwin's picture of the produce cooler floor accurately depicted the produce cooler on March 17. *See* Costco SUMF ¶ 44; *see also* Klever Dep. at 38:23–39:12. Ms. Klever testified that the manager (Goodwin) told them about a man who slipped on the floors about a week before Reichwein's fall, with regard to the "slippery floors." Klever Dep. at 28:12–29:6.

Plaintiffs brought forth an Engineering Evaluation of Floor Condensation and Slip Risk by Penglin Ding, who reviewed counsel's correspondence, Goodwin's deposition, the safety and incident reports, the thermometer service records, and refrigeration maintenance records. *See* ECF No. 18-2 at 38. He noted "[a] filter-drier removes moisture and contaminants from refrigerant inside sealed piping (Danfoss)[; a] blocked liquid-line drier can reduce cooling; internal moisture may freeze at an expansion device and restrict flow[,]" and "[t]hese effects could contribute indirectly to floor moisture through the mechanisms below." *Id.* Mr. Ding concluded he could "not rule out that condensation was present on the concrete floor" when Reichwein fell, because "[c]ondensation can form when the floor is cooler than the dew point of the air in contact with it, including when humid store air enters the cooler and contacts a cold floor." *Id.* at 39. He recognized "[t]he records do not identify the affected equipment or cause of the temperature-log entries." *Id.* He also acknowledged "[a]ction [l]og is labeled for unresolved

hazards, [i]ncident-time floor temperature, humidity and slip resistance are unknown, so the available evidence does not confirm whether condensation formed or contributed to this fall." *Id.*

**B. Procedural History**

Plaintiffs filed a Complaint in the Lehigh County Court of Common Pleas on March 16, 2026, and Costco removed this action to this Court on April 17, 2026. *See* Costco SUMF ¶ 2; *see also* Notice of Removal, ECF No. 1. Plaintiffs, in a poorly drafted Complaint,[3] brought a negligence claim against Costco for an alleged slip-and-fall that resulted in injury, as well as a loss of consortium claim. *See* Costco SUMF ¶ 3; *see also* Compl. ¶¶ 12–27.

Costco filed a Motion for Summary Judgment on September 18, 2026. *See* Mot., ECF No. 15. Plaintiffs filed a Response in Opposition on October 8, 2026, *see* Resp., ECF No. 18-1, with exhibits, *see* ECF No. 18-2. Costco filed a Reply on October 15, 2026. *See* Reply, ECF No. 19. The case was originally to proceed to arbitration, *see* ECF No. 3, but given the Motion for Summary Judgment, the Court canceled the arbitration hearing pending resolution of the Motion, *see* ECF No. 16.

## III. LEGAL STANDARDS

**A. Motion for Summary Judgment – Review of Applicable Law**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" if proof of its existence or nonexistence might affect the

---

[3] The Complaint asserts only one count titled "PLAINTIFF, KIRK KLEVER VS. DEFENDANTS." Compl. 11 ¶¶ 26–27. Thereunder, it is alleged that "[s]olely because of the aforesaid negligence of the Defendants. . . the Plaintiff, KIRK KLEVER, has been and probably will be in the future be deprived of the . . . consortium of his wife, LESLIE REICHWEIN." *Id.* ¶ 27. There is no separate count for negligence, nor a separate count with respect to Reichwein. *See generally id.* However, the allegations refer to the "negligence" of Defendants and injury to Reichwein. *Id.* ¶ 21.

outcome of the case under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *See* Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The court must consider the evidence in the light most favorable to the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

**B. Negligence – Review of Applicable Law**

"A plaintiff must prove four elements to establish negligence by a defendant: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages." *Toro v. Fitness Int'l LLC.*, 150 A. 3d 968, 976–977 (Pa. Super. Ct. 2016). "Whether the defendant owed a duty of care under the first element is a question of law." *Sabric v. Martin*, 532 F. App'x 286, 289 (3d Cir. 2013) (citing *Matharu v. Muir*, 29 A.3d 375, 384 (Pa. Super. Ct. 2011)).

### C. Premises Liability for Businesses – Review of Applicable Law

"Under Pennsylvania law, visitors to a store are 'business invitees,' and '[t]he duty owed to a business invitee is the highest duty owed to any entrant upon land.'" *Pace v. Wal-Mart Stores E., LP*, 337 F. Supp. 3d 513, 518 (E.D. Pa. 2018) (quoting *Campisi v. Acme Markets, Inc.*, 915 A.2d 117, 119 (Pa. Super. Ct. 2006)). Pursuant to that duty,

> [a] possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> c) fails to exercise reasonable care to protect them against the danger.

*Pace*, 337 F. Supp. 3d at 519 (quoting *Henderson v. J.C. Penney, Corp.*, No. 08-177, 2009 WL 426180, at *3 (E.D. Pa. Feb. 20, 2009)); *see also* Restatement (Second) of Torts § 332 (1965). "However, the 'mere fact that an accident occurred does not give rise to an inference that the injured person was the victim of negligence.'" *Pace*, 337 F. Supp. 3d at 519 (quoting *Cox v. Wal-Mart Stores E., L.P.*, 350 F. App'x 741, 743 (3d Cir. 2009)). Rather, a plaintiff must establish the following elements:

> (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to the interests of another.

*Pace*, 337 F. Supp. 3d at 519 (quoting *Felix v. GMS, Zallie Holdings, Inc.*, 501 F. App'x 131, 134 (3d Cir. 2012)).

**D. Loss of Consortium - Review of Applicable Law**

"A claim for loss of consortium is intended to compensate an aggrieved spouse for the damaged marital expectations that result from injuries to his or her marital partner." *Saranchuk v. Lello*, No. 15-893, 2017 U.S. Dist. LEXIS 169515, at *46–47 (M.D. Pa. Oct. 13, 2017) (citing *Hopkins v. Blanco*, 320 A.2d 139 (Pa. 1974)), *on reconsideration*, 2018 U.S. Dist. LEXIS 143103 (M.D. Pa. Aug. 23, 2018), *aff'd in part, vacated in part, rev'd in part*, 779 F. App'x 888 (3d Cir. 2019). Loss of consortium is a derivative claim that depends upon a viable tort claim of the spouse. *See Kline v. Zimmer Holdings, Inc.*, 662 F. App'x 121, 123 n.1 (3d Cir. 2016).

## IV. ANALYSIS

Plaintiffs' claims fail. Reichwein was an invitee at the time of the fall. *See* Restatement (Second) of Torts § 332 ("A business visitor [one type of invitee] is a person invited to enter the land for a purpose directly or indirectly connected with the business dealings with the possessor of the land."). Plaintiffs must show that Costco breached its duty to Reichwein by creating a dangerous condition (such as condensation). Under Pennsylvania law, "the mere . . . occurrence of injury [is] insufficient to impose liability upon anyone[ because t]here remains to be proved the vitally important link of causation." *Cuthbert v. Phila.*, 209 A.2d 261, 263 (Pa. 1965) (citations omitted); *see also Hillelson v. Renner*, 130 A.2d 212, 214 (Pa. Super. Ct. 1957) ("Proving that an accident happened, or the existence of an opportunity for it to happen is entirely insufficient to establish negligence.") (citation omitted). Moreover, a jury cannot return a verdict based merely on speculation or conjecture. *See Smith v. Bell Telephone Co.*, 153 A.2d 477, 479 (Pa. 1959). Rather, as noted by the Pennsylvania Supreme Court:

> [T]here must be evidence upon which logically its conclusion may be based. . . . Clearly this does not mean that the jury may not draw inferences based upon all the evidence and the jurors' own knowledge and experiences, for that is, of course, the very heart of the jury's function. It means only that the evidence presented must be

> such that by reasoning from it, without resort to prejudice or guess, a jury can reach the conclusion sought by plaintiff, and not that that conclusion must be the only one which logically can be reached.

*Id.* at 479–480 (citations omitted) (emphasis in original). “A plaintiff’s ability to produce evidence of a dangerous or hazardous condition is the crux of a premises liability action involving a slip-and-fall.” *Daniels v. Sears and Sears Roebucks & Co.*, No. 15-4821, 2016 WL 521205, at *3 (E.D. Pa. Feb. 10, 2016) (citing Restatement (Second) of Torts § 343 (1965)); *see also Canton v. Kmart Corp.*, 470 F. App’x 79, 83 (3d Cir. 2012) (same). Thus, “[t]he threshold question is whether there is sufficient evidence [i]n the record to conclude that a dangerous condition existed.” *Speaks v. United States*, No. 23-487, 2024 WL 4882647, at *2 (E.D. Pa. Nov. 25, 2024), *aff’d,* No. 25-1156, 2026 WL 280892 (3d Cir. Feb. 3, 2026).

Here, Reichwein fails to identify the cause of her fall, which is fatal to her negligence claim. Rather, Reichwein can only speculate that she slipped on condensation in the produce cooler. *See* Reichwein Dep. at 40:21–43:7. She stated that she did not see condensation on the floor, testifying only that the floor was slippery. *See id.* at 41:3-14, 63:24. Additionally, Ms. Klever testified that she did not see any condensation on the floor and that “[t]here was no conversation about some sort of liquid or anything being on the floor.” Klever Dep. at 24:1-25:7. Goodwin also testified that he did not see any liquid or debris on the produce cooler floor. *See* Goodwin Dep. at 18:18-19:4. Similarly, a picture of the produce cooler, taken soon after the fall, does not show any condensation on the floor, nor any other potentially hazardous condition. *See* Costco SUMF ¶ 31; Reichwein Dep. at Ex. 1. Nor does Costco’s floor walk for the hour before Reichwein’s fall show any hazards on the floor in the produce cooler. *See* Ex. F. Instead, the temperature logs show no problems with the produce cooler on March 17, 2024. *See* Ex. G. Finally, even though Reichwein’s expert could “not rule out that condensation was present on the

concrete floor" when Reichwein fell, he stated that "the available evidence does not confirm whether condensation formed or contributed to this fall." ECF No. 18-2 at 38-39.

Therefore, there is no evidence in the record that condensation on the produce cooler floor caused Reichwein to slip and fall. *See Daniels*, 2016 WL 521205, at *3–4 (granting summary judgment when the plaintiff slipped on an "unusually shiny" floor but did not identify the cause of her fall, concluding "evidence of a shiny floor alone does not constitute evidence from which a fact-finder could reasonably infer the existence of a hazardous condition"); *see also Speaks*, 2024 WL 4882647, at *3 ("Because the record is devoid of evidence that the stairs were wet, no reasonable factfinder could find a dangerous condition of the stairs due to wetness at the time of the [p]laintiff's accident.").

At most, Reichwein maintains that the floor was slippery and attributes condensation to the slippery nature of the floor. This alone is not enough to show a genuine dispute of fact of a hazardous condition. "The weight of authority in Pennsylvania makes clear that summary judgment is warranted where there is no evidence of a dangerous o[r] hazardous condition beyond [a p]laintiff's affirmations that the floor was 'shiny' or 'slippery.'" *Varghese v. Kellermeyer Bergensons Servs., LLC*, No. 17-3866, 2019 WL 1114903, at *4–5 (E.D. Pa. Mar. 8, 2019) (granting summary judgment because of the plaintiff's failure to present evidence of the existence of a dangerous condition when the plaintiff testified that the floor was "slippery" but "there was no liquid or foreign substance that caused her fall").

In a similar case, *Yeiter v. Kmart Corp. Bergensons Prop. Servs, Inc.*, the plaintiff "testified that she did not observe any foreign object on the floor which caused her fall and only made a mere allegation that the floor was slippery . . . attribut[ing] her fall to the floor itself." No. 12190 EDA 2013, 2014 WL 10896970, at *4 (Pa. Super. Ct. July 1, 2014). There, the

Superior Court affirmed summary judgment and concluded that the plaintiff failed to make out a *prima facie* case for negligence where the record was "devoid of any reason or explanation for why [she] slipped and fell." *Id.* at *2–3. Similarly, here, Reichwein does not know the cause of her fall and only assumes that it was condensation without providing any support. This is mere speculation without any supporting evidence and does not establish that a hazardous condition was the cause of Reichwein's fall.

Additionally, Plaintiffs' argument—that there was circumstantial evidence of condensation—fails. In Pennsylvania, "negligence need not be proved by direct evidence, but may be inferred from attendant circumstances if the facts and circumstances are sufficient to reasonably and legitimately impute negligence." *Ryan v. Super Fresh Food Mkts., Inc.*, No. 99-1047, 2000 WL 537402, at *3 (E.D. Pa. Apr. 26, 2000) (citing *Miller v. Hickey,* 368 Pa. 317, 81 A.2d 910, 914 (Pa. 1951)). "[W]hile [the] plaintiff must prove that the defective condition existed long enough so that by the use of reasonable care it should have been discovered and remedied, that fact, like other facts, may be proved by circumstantial . . . evidence." *Ryan*, 2000 WL 537402, at *3 (external citation omitted); *see also Spinelli v. Costco Wholesale Corp.* No. 02-8028, 2003 WL 23096887, at *1 (E.D. Pa. Dec. 18, 2003) (same).

However, Plaintiffs' presented circumstances are inherently speculative. First, the preventive maintenance report shows that Costco would "order[] driers." ECF No. 18-2 at 34. Perhaps this is so, but the report itself does not support Plaintiffs' argument that there was condensation on the floor of the produce cooler when Reichwein fell. Second, that Costco replaced the thermostat two months before is too far remote from Reichwein's injury and does not show that the new thermostat (or any thermostat issues) caused Reichwein's fall. Third, that the floor walk showed a problem with the temperature logs an hour before Reichwein's fall does

not mean that there was also condensation on the floor as the floor walk indicated no hazards on the floor. *See* Ex. F. The floor walk does not specify where in the Costco the temperature problem was, only that it was in the zone of the store with the produce cooler (Zone 2). *See id.* Rather, Costco's temperature logs show that there was no temperature problem with the produce cooler on March 17, 2024. *See* Ex. G. Fourth, the lack of surveillance cameras has no bearing on this case. That Costco could benefit from having surveillance cameras is wholly irrelevant to Reichwein's fall because the absence of such cameras is not evidence that there was a dangerous condition in the produce cooler. *See Varghese*, 2019 WL 1114903, at *4 ("The expert report [providing that it would be reasonable to provide a carpeted area] does not change [the court's] analysis[ because t]he question is not whether alternative covering of the floor with a rug would be 'reasonable and appropriate' but rather whether [the p]laintiff has brought forth evidence to establish the presence of a hazardous condition.").[4] Ultimately, Plaintiffs' arguments are nothing more than an invitation to speculation. The Court declines that invitation. *See Daniels*, 2016 WL 521205, at *4 (referencing *Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 75 (3d Cir. 1996) ("[W]hen the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.") (citation and internal quotation omitted)).

---

[4] As the Court in *Varghese* declined to consider the expert report for the proposition that a carpeted floor would be safer, *see* 2019 WL 1114903, at *4, the Court likewise disregards Mr. Ding's report. The report is speculative because it only concludes that condensation could have been the cause of Reichwein's fall. Mr. Ding also acknowledged that "the available evidence does not confirm whether condensation formed or contributed to this fall." ECF No. 18-2 at 39. Such a conclusion is insufficient to show a genuine factual dispute over the existence of the condensation. *See Cohen v. Cohen*, 125 F.4th 454, 461–462 (3d Cir. 2025) ("[A]n expert's testimony [should be] 'based on the methods and procedures of science, not on subjective belief and unsupported speculation.'") (citing *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 80–81 (3d Cir. 2017)).

Additionally, the cases Plaintiffs cite are inapposite. First, *Ryan* involved spilled chocolate pudding and was predicated on whether the defendant had notice of the pudding, not whether the pudding caused the plaintiff's fall. *See* 2000 WL 537402, at *1–3. The court noted that the question of how long the pudding sat on the floor and the defendant's knowledge of such were questions of fact to be reserved for a jury. *See id.* at *3. However, here, there is no evidence as to the cause of Reichwein's fall. Since Reichwein does not provide *any* evidence of condensation on the floor of the produce cooler, there is no circumstantial evidence to support her claim.

Likewise, the court in *Spinelli* denied summary judgment because witnesses observed residue on the floor, and "the evidence that such a dual residue existed could permit a reasonable jury to conclude both that there was a substance on the floor and that this substance caused [the plaintiff's] fall." 2003 WL 23096887, at *1. Here, neither Reichwein nor the witnesses before or after her fall testified to seeing any condensation on the floor of the produce cooler. Thus, *Spinelli* does not support Reichwein's condensation argument.

Therefore, this Court will follow the lead of numerous Pennsylvania state and federal courts, who routinely grant summary disposition in favor of the business owner where a plaintiff "could not identify a cause of [the] injuries or merely identified possible causes." *Jones v. Giant Food Stores, LLC*, No. 10-1099, 2011 WL 6003193, at *4 (M.D. Pa. Oct. 13, 2011) *report and recommendation adopted*, No. 10-1099, 2011 WL 6002986 (M.D. Pa. Nov. 30, 2011); *see also Stagnaro v. Target Corp.*, No. 16-3535, 2019 WL 1934871, at *12 (E.D. Pa. May 1, 2019) (granting summary judgment when the plaintiffs did "not know how [the injured plaintiff] fell"); *Freund v. Hyman*, 103 A.2d 658, 659 (Pa. 1954) (upholding an order of nonsuit where the plaintiff knew where she fell and a photograph showed a raised piece of sidewalk but did not

produce evidence that the elevation in the step caused her to fall); *McNeil v. Ginsburg*, 28 D. & C. 4th 531, 534 (Pa. Ct. Com. Pl. 1996), *aff'd*, 683 A.2d 319 (Pa. Super. Ct. 1996) (granting summary judgment for the defendant where the plaintiff was not aware of the actual cause of the slip-and-fall and the surrounding circumstances indicated there could be numerous possible causes); *Flocco v. City of Phila.*, 29 Phila. Co. Rptr. 1, 6–8 (Pa. Ct. Com. Pl. 1994) (granting summary judgment where the accident site was covered with rocks and debris but there was no evidence showing that these conditions caused the plaintiff to fall).

Since the Court finds Plaintiffs fail to produce evidence of a dangerous condition (condensation), the Court need not determine whether Costco had either actual or constructive notice of the condensation. *See Daniels*, 2016 WL 521205, at *3 (citing Restatement (Second) of Torts § 343) (granting summary judgment based upon the plaintiff's failure to offer evidence establishing that a dangerous or defective condition existed and not considering the notice element).

The Court grants summary judgment to Costco on Reichwein's negligence claim due to insufficient evidence of causation. Accordingly, the Court also dismisses Reichwein's negligence claim against the John Doe Defendants[5] and Mr. Klever's loss of consortium claim.[6]

---

[5] *See Baker v. United States*, 642 F. App'x 147, 152 (3d Cir. 2016) (affirming the district court's decision to grant summary judgment as to the claims against the unnamed defendants because "an action cannot be maintained solely against Doe defendants"); *Hindes v. F.D.I.C.*, 137 F.3d 148, 155 (3d Cir. 1998) (affirming the district court's dismissal of "the claims against the Doe defendants because there were no named parties remaining in the action and because appellants failed to identify the fictitious parties by the close of discovery").

[6] *See Kline*, 662 F. App'x at 123 n.1 (affirming the district court's grant of summary judgment on tort claims and finding no need for a separate analysis of loss of consortium claim); *Pusey v. Becton Dickinson & Co.*, 794 F. Supp. 2d 551, 565–566 (E.D. Pa. 2011) (dismissing the spouse's loss of consortium claim after granting summary judgment on the plaintiff's claims); *see also Scattaregia v. Shin Shen Wu*, 495 A.2d 552, 554 (Pa. Super. Ct. 1985) ("[B]ecause a loss of consortium action has been viewed as derivative its success in this Commonwealth has always been dependent upon the injured spouse's right to recover.")

## V. CONCLUSION

For the foregoing reasons, the Court grants Costco's Motion for Summary Judgment because of Plaintiffs' failure to produce evidence regarding the cause of Reichwein's fall.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*______
JOSEPH F. LEESON, JR.
United States District Judge